v. National Labor Relations Board, Respondent, Petitioner, Cross v. National Labor Relations Board. Mr. Jones. Good morning, judges. Good morning. First time here so let me take a deep breath. May it please the Court, I am Milton Jones for the Petitioner Security Walls. Today we present two issues for the consideration of the Court. Number one, should the record be reopened for further evidence? Number two, can a policy handbook supersede a negotiated non-personal service contract? First, let's get started with the issue about reopening. There is no doubt that the three officers who were fired did not stop people from entering the IRS facility in Austin, Texas. We want to reopen the record to submit further evidence that the decider would have rejected reinstating the three officers. Yeah, but that doesn't help you, it seems to me. The affidavit doesn't assert that the IRS directed the company to discharge the guards when the decision was made. When the decision was made. Right. I mean, see, it just doesn't seem to me that the affidavit proves that there would have been a different result. If the affidavit doesn't establish that the IRS directed their discharge, that to me is the critical problem. Yes, Your Honor. And I understand and appreciate that. If I can explain, is that what we're talking about in this case, as far as the difference between our position and the general counsel, is the difference between theory and reality. Is that in theory, we could have queried all the way up to the director, maybe even the president. But in reality, you can't do that. The reason why you can't do that is because... Well, the problem is the contract says, that you're relying on, says that the service could direct this, but the service never did. The service could direct this, but that doesn't say that we can't take the action on our own, obviously. Well, the contract, you know, the handbook says something different, right? The handbook says different, yes. I mean, you can't have a discharge for the first offense. The handbook does say that, but we say that the handbook, as the board minority reason, it's a policy. And we say that the IRS, what we had with the IRS was a non-personal service. But the contract only said they had discretion to discharge for cause. Yes. Well, it doesn't say automatically discharge. No, it does not say automatically. And if I can explain, here's what happened here, I believe, is that the IRS did not necessarily direct us at that time to do that. But we say that had they known, had the deciders known, they would not have reinstated them. The reason why we could not go... Can I ask a quick question? Yes. First of all, I have to say I'm entirely sympathetic to your position. I think, you know, if folks enter IRS facilities in your security, you should be able to fire the people who let them in. disciplinary moves. Even if the IRS had said, look, somebody goes in the facility, people who let them in are fired immediately. Even if they had said that, what you did, what your company did, was let these guys go without bargaining. And that, whether or not the IRS said they got to go or not, doesn't change the ultimate outcome that the NLRB achieved here. I understand. Once again, it's the difference between the theory and the reality. In reality, we could not have queried any further than what we did. The people that we deal with, the people that control our contracts, they have some things in common. They have massive influence, they have fragile egos, and they have long memories. If it got out that we were trying to leapfrog to get to the higher people, we could have lost our contract. These people are very influential. And they could have made it so that we could not get any further contracts around the country. Once it became clear to us that the deciders really weren't consulted in this one, and it became equally clear to us that they would not have reinstated these men, then that shows that we were excusably ignorant. But once we became aware of it, then we brought it to the attention of the board, and we asked them to reopen it. Well, one of the problems with reopening, you have a new hearing, and somebody says, here's what I would have done had I known certain things. Well, there's some principles of the law against Monday morning quarterbacking like that, what I would have done. So let's change the facts that I would have done such and so if I had known. And that affidavit, as Judge Pryor says, didn't say that the CO would have demanded termination. Right. It just says that it wouldn't have allowed the reinstatement, wouldn't have approved the reinstatement. Yes, sir. As the minority for the board pointed out, it's a matter of reading the board's rules the way they should be read, and that is liberally construed. And also the board minority talked about fairness, is that there should be a full hearing. Yeah, there are due process arguments that, for example, the dissenter on the board raised, but the problem is those aren't before us. Right, right. But however, what is before you is the idea of fairness. No, I think the fairness argument is the due process argument. I don't think that's before us. But the board's rules. I mean, what we really have to decide is whether there's substantial evidence to support the board's ruling and whether we have to enforce their order. Then let's talk about the substantial evidence. Is that in this case, we believe there was not substantial evidence because, first of all, the board, of course, did not reopen the case to hear our further evidence. Secondly, the board did not follow its precedent. The board's precedent also always has been that a policy handbook does not supersede a negotiated contract. If we had a collective bargaining agreement and the employer put out a policy handbook that took away the collective bargaining agreement, they would say that doesn't work because a policy handbook cannot take away a negotiated contract. In this case, we had a negotiated contract between the IRS and Security Walls. The policy handbook does not take away the power of that contract. We believe that the – yes, Judge Breyer. The problem is that the service didn't do what the contract specifies. You argue as if it was the contract that required this, and that didn't happen. And the new evidence that you wanted to submit in support of your motion to reopen the record didn't say that the service even would have done that. Yes, Judge Breyer. However, is that the way that we see it is the way that I believe the courts see it. And the courts say that there should be a opportunity to be fully heard. And the courts have criticized the board in the past by saying that strict adherence to its rules and regulations does not do that, and that is an abuse of discretion. So under our theory, was it reasonable for Security Walls not to rock the boat, risking its present and future? Once it became clear that the decider wasn't consulting, then and only then were we able to bring the evidence, that evidence to light, asking that the record be reopened. That the evidence became newly discovered and not previously available. Whose standard do we apply in determining whether to reopen? Whose standard? Yeah, ours, or do we second guess what the board would do? I believe that we have to go in the area of the courts, of course. You're asking us to direct the board to reopen. Direct the board to reopen, yes we are. What standard applies? The federal standard or the court of appeals standard, let's say, on review? Or the board standard internally? Well, I don't think we have to get to that. In other words, we all agree that a party to reopen the record, to introduce evidence that is newly discovered, has to show that the move ant acted with reasonable diligence to uncover and introduce the evidence. In this situation, we were excusably ignorant. All of that aside, I get back to the point I raised at the outset, which is you have to show that if it had been adduced and credited, it would have produced a different result. And the evidence you submitted doesn't. It wouldn't do that. Yes, Your Honor, I hear you. We believe that it would because we know that property. We know Austin. We know the IRS. We also know that people want to hurt the IRS. One guy got into a plane and he flew it into the side of a building at the IRS. We know that they understand not just theory, they understand the reality. And had the decider been given the opportunity, the decider would not have reinstated these three guards. And so that's where we go on. You were saying something about that. Good morning. Good morning, Your Honors. Barbara Sheehy for the National Labor Relations Board. I just have a couple of points I'd like to make. I'm not sure I have much to add beyond what our brief is. Is there anything that we misunderstand about this matter? Absolutely. No, there's no misunderstanding. There's just one thing I'd say is that there was a hearing on this and there were witnesses called by the employer. There was, you know, Carpenter, which was one of their own officials. So it's not that there wasn't a full hearing or an opportunity here. So I think that's all I'd like to add. They could have sought out the CO. Certainly. They could have located the person. Certainly. Who sent the e-mail. The only identification, right, is C.O.R. Sears is the only individual who anybody testified that had any authority to do anything. And he knew. And he didn't do anything. There's a contemporaneous e-mail exchange where he's viewed the videotapes and he doesn't suggest that there's going to be any action taken. So I just wanted to remind the Court that there was actually, I'm sure the Court's aware of it, that there was a hearing on it. So unless there are any questions, I don't think there's a misunderstanding. And I don't think I can add beyond what's in our brief and what the questions have already fleshed out. So I'd ask for full enforcement then. Thank you. Your Honor, I guess that's here we disagree with the General Counsel. I think we understand both positions. You just disagree with the Board. Yes, I do. And that is the reality of the situation. It all has to do with the reopening on the basis of the e-mail. The reopening on the basis of the e-mail and also the policy statement does not vitiate, does not take away the effects of the contract. So, yes, if you have any further questions, I can answer them. If not, I thank the Court for its kind consideration. Thank you, Mr. Jones. Thank you. We're going to go to the next case, high-tech.